**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**UNITED STATES OF AMERICA**
        **Plaintiff,**

   v.                                                     **Case No. 17-CR-39**

**WILLIAM HOWARD**
        **Defendant.**

---

### STATEMENT OF REASON MEMORANDUM

Defendant William Howard pleaded guilty to distribution of heroin and possession of a firearm as a felon, and I set the case for sentencing. In imposing sentence, the district court must first determine the defendant's imprisonment range under the guidelines, then make an individualized assessment of the appropriate sentence based on the factors set forth in 18 U.S.C. § 3553(a). E.g., United States v. Kappes, 782 F.3d 828, 837 (7th Cir. 2015).

### I. GUIDELINE CALCULATION

On the drug distribution count, defendant's pre-sentence report ("PSR") set a base offense level of 24 based on a drug weight of 100-400 grams of heroin, U.S.S.G. § 2D1.1(c)(8), then added 2 levels under U.S.S.G. § 2D1.1(b)(1) based on defendant's possession of firearms. On the firearm count, the PSR set a base level of 20 because one of the firearms defendant possessed was capable of accepting a large capacity magazine, U.S.S.G. § 2K2.1(a)(4)(B), then added 2 levels because defendant possessed between three and seven firearms, § 2K2.1(b)(1)(A), and 4 levels because he possessed the firearms in connection with another felony, i.e., drug distribution, § 2K2.1(b)(6)(B). The report then grouped the two counts pursuant to U.S.S.G. § 3D1.2(c), producing a combined adjusted level of 26, and subtracted

3 levels for acceptance of responsibility, U.S.S.G. § 3E1.1, for a final level of 23. Coupled with defendant's criminal history category of I, level 23 produced an imprisonment range of 46-57 months. I adopted these calculations without objection.

## II. SECTION 3553(a)

### A. Sentencing Factors

Section 3553(a) directs the court to consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the [advisory sentencing guideline range;]

(5) any pertinent policy statement . . . issued by the Sentencing Commission[;]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The court must, after considering these factors, impose a sentence "sufficient but not greater than necessary" to satisfy the purposes of sentencing: just punishment, deterrence,

protection of the public, and rehabilitation of the defendant. Id. While the court must as part of the analysis consider the type and range of sentence recommended by the guidelines, it "may not perfunctorily impose a guidelines sentence or even presume that such a sentence is appropriate in a given case." United States v. Warner, 792 F.3d 847, 855 (7th Cir. 2015). "Ultimately, it falls on the district court to weigh and balance the various factors and to 'make an individualized assessment based on the facts presented.'" Id. (quoting Gall v. United States, 552 U.S. 38, 50 (2007)).

**B.     Analysis**

**1.     The Offense**

DEA agents received information from a confidential source ("CS") that defendant was involved in distributing heroin. The CS stated that he had obtained heroin from defendant on numerous occasions, often at 20 grams per transaction. The DEA subsequently used the CS to conduct controlled heroin transactions from defendant on November 13, 2015, November 24, 2015, January 20, 2016, and March 3, 3016, during which defendant distributed a total of about 70 grams of heroin.

On March 10, 2016, agents located defendant outside the residence of one of his acquaintances. Agents observed him walk from that residence to his vehicle, open the trunk, and place an item inside. As defendant entered the driver's seat of the vehicle, agents approached and arrested him. A search of the vehicle revealed the item defendant placed in the trunk was a loaded 9mm handgun, which formed the basis for the felon in possession count.

After his arrest, agents informed defendant that they were about to execute a search

3

warrant at his residence. Defendant was cooperative and provided agents with a key to the residence. Inside defendant's bedroom, agents found a locked safe. Defendant provided agents with a key to the safe, inside of which agents found a total of 40 grams of heroin; three bottles of Dormin (a common heroin-cutting agent); and two loaded assault rifles with 30-round magazines. Agents also recovered $4500 in U.S. currency. Elsewhere in the residence, agents located two digital scales, three handguns, various containers with marijuana, and drug paraphernalia.

After the search, defendant agreed to speak to agents. He admitted to regularly obtaining heroin and distributing it to others. He also admitted he possessed the two assault rifles found in the safe in his bedroom but was holding them for someone else. He further admitted the 40 grams of heroin and $4500 found in the residence belong to him. That cash included pre-recorded buy money used during the November 24, 2015 heroin transaction between defendant and the CS.

In his statement to the PSR writer, defendant indicated that he was 41, almost 42, and just had his first child. He knew what he was doing was wrong yet still jumped at the opportunity to make some fast money thinking he could get away with it. He had not previously sold drugs but felt the pressure of having his first child and thought that if he could make some quick cash he would be alright financially.

**2.  The Defendant**

Defendant's prior record included several older convictions: carrying a concealed weapon in 1992, when he was 17, for which he was sentenced to 1 year probation; recklessly endangering safety in 1995, when he was 19, for which he was sentenced to 5 years in prison; and possession of cocaine in 2005, when he was 29, for which he was sentenced to 20 days.

4

None of those cases scored under the guidelines due to their age, so he fell in criminal history category I.

Defendant reported a good childhood, but he started associating with a gang as a teen, leading to his early brushes with the law. He had family support, and he had been in a relationship for 18 years, living with his girlfriend since 2014. In October 2016, he had a child with another woman; he appeared to be involved as a father.

As to correctional treatment issues, defendant had some residual effects from a 1999 shooting, including limited mobility of the left arm and back pain. He admitted regular use of marijuana from the age of 15 until January 2017. He tested positive on January 13, 2017, prior to his initial appearance in this case. Since his placement on bond, however, he tested negative nine times, and his girlfriend confirmed that he stopped using marijuana. He dropped out of school and had not obtained a GED or HSED. Since October 2016, he worked as a driver for Uber; his work record prior to that was spotty.

### 3.     The Sentence

As indicated, the guidelines called for 46-57 months in prison, and the government recommended a sentence at the lower end of that range. Defendant recommended a sentence of probation and home confinement. I found the sentence recommended by the defense sufficient.

First, while the offense was serious, involving a dangerous and highly addictive drug, as well as several firearms, it did not appear that defendant was an entrenched, large scale dealer. Nor was there evidence of use, attempted use, or threatened use of the guns.

Second, while defendant had a prior record, it was rather old. It also appeared that his foray into drug dealing, which apparently started in 2015, did not last all that long. Since his

arrest in March 2016, he had done well. There was no indication of further criminal conduct from March 2016, when he was arrested for these offenses, to January 2017, when he was charged. He had also done well on bond after being charged. He apparently stopped the marijuana use and maintained regular employment. This suggested that a guideline term was not needed to protect the public or deter.

Third, defendant was cooperative with the authorities in this matter. He assisted agents with the search, made a detailed post-arrest statement, and later debriefed with the government under a proffer letter. The government believed he was generally truthful in his statements, and that he attempted to provide information that would be useful to law enforcement. The cooperation was also consistent with the way he handled this case, immediately accepting responsibility and pleading to an information. This suggested a commitment to better behavior in the future.

Under all the circumstances, I found a sentence of five years probation with a condition of six months home confinement sufficient but not greater than necessary to satisfy the purposes of sentencing. This sentence provided monitoring for a lengthy period of time to ensure deterrence and public protection, and a period of community confinement to provide punishment without interrupting employment and family relationships. I stressed that any violations of probation could lead to revocation and any sentence available originally, up to 20 years in prison on the drug trafficking count and up to 10 years on the firearm count; this provided a strong incentive for defendant to comply.

### III. CONCLUSION

For these reasons, I placed defendant on probation for five years on each count concurrent. As conditions, I required participation in drug testing and treatment, and

6

compliance with the requirements of home confinement for a period not to exceed 180 consecutive days.

Dated at Milwaukee, Wisconsin, this 14th day of June, 2017

/s Lynn Adelman
LYNN ADELMAN
District Judge